# Exhibit A

**DECLARATION OF ASHLEY SIMONSEN IN SUPPORT OF
DEFENDANT TOOTSIE ROLL INDUSTRIES, INC.'S NOTICE OF
REMOVAL OF CIVIL ACTION FROM STATE COURT**

CLARKSON LAW FIRM, P.C.
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Shireen M. Clarkson (SBN 237882)
sclarkson@clarksonlawfirm.com
Shalini M. Dogra (SBN 309024)
sdogra@clarksonlawfirm.com
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff Ketrina Gordon*

FILED
Superior Court of California
County of Los Angeles

FEB 10 2017

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Nancy Alvarez

SUPERIOR COURT FOR THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

BC 649875

| | |
|---|---|
| KETRINA GORDON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>TOOTSIE ROLL INDUSTRIES, INC., and DOES 1 through 10, inclusive,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*<br><br>2.  VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et. seq.*<br><br>3.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et. seq.*<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ketrina Gordon ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Tootsie Roll Industries, Inc. ("Defendant") and Does 1 through 10, inclusive (collectively referred to herein as "Defendants") and alleges as follows:

1

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## SUMMARY OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all purchasers of Junior Mints® and Sugar Babies® candy boxes (the "Product(s)") sold at retail outlets and movie theaters throughout California and the United States. A true and correct representation of the front of the Products' packaging is set forth in the images below.





2.      Defendant intentionally misleads and shortchanges consumers by falsely and deceptively misrepresenting the amount of candy actually contained in each box of Products. Defendant uniformly under-fills the opaque boxes of Products by 45%. Every box is filled only 55% full with candy product. The 45% balance is empty headspace, or "slack-fill," all of which serves no legitimate or lawful function.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## PARTIES

1.      Plaintiff is, and at all times relevant hereto was, a citizen of California residing in the county of Los Angeles. Plaintiff made a one-time purchase of a Junior Mints® 3.5 oz. box at Pacific Theaters at the Grove in Los Angeles, California in 2016. In making her purchase, Plaintiff relied upon the opaque packaging, including the size of the box, which was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers to purchase the Products. If Plaintiff had known that the box contained nonfunctional slack-fill, she would not have purchased the Product, let alone paid for candy product she never received.

2.      Tootsie Roll Industries, Inc. is a corporation headquartered in Chicago, Illinois. Tootsie Roll maintains its principal place of business at 7401 South Cicero Ave., Chicago, IL, 60629-5885. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Tootsie Roll is the owner, manufacturer, and distributor of the Products, and is the company that created and/or authorized the false, misleading, and deceptive packaging for the Products.

3.      The true names and capacities, whether individual, corporate, associate, or otherwise of certain manufacturers, distributors, and/or their alter egos sued herein as DOES 1 through 10 inclusive are presently unknown to Plaintiff who therefore sue these individuals and/or entities by fictitious names.  Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes and based thereon alleges that DOES 1 through 10 were authorized to do and did business in Los Angeles County.  Plaintiff is further informed and believes and based thereon alleges that DOES 1 through 10 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages hereinafter set forth below.
///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, Section 10, because this case is a cause not given by statute to other trial courts.

5.     Plaintiff has standing to bring this action pursuant to the California Consumers Legal Remedies Act, Civil Code Section 1750, *et seq.*; California False Advertising Law, Business and Professions Code Section 17500, *et seq.*; and California Unfair Competition Law, Business and Professions Code Section 17200, *et seq.*

6.     The Products include all products manufactured by Defendant which are substantially similar to Junior Mints® 3.5 oz. boxes, including Sugar Babies® 6 oz. boxes, which are packaged and sold in opaque boxes.

7.     Out-of-state participants can be brought before this Court pursuant to the provisions of California Code of Civil Procedure Section 395.5.

8.     Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between it and California.

9.     Venue is proper in this Court because Defendant conducts business in Los Angeles County, Defendant receives substantial compensation from sales in Los Angeles County, and Defendant made numerous misrepresentations which had a substantial effect in Los Angeles County, including distribution and sale of the Products throughout Los Angeles County retail outlets, as well as distribution of print media and internet advertisements.

## FACTUAL ALLEGATIONS

10.     The average consumer spends only 13 seconds to make an in-store purchasing decision.[1] That decision is heavily dependent on a product's packaging, and particularly the package dimensions: "Most of our studies show that 75 to 80

---

[1]     http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

4

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

percent of consumers don't even bother to look at any label information, no less the net weight . . . . Faced with a large box and a smaller box, both with the same amount of product inside . . . consumers are apt to choose the larger box because they think it's a better value."[2]

11.     Slack-fill is the difference between the actual capacity of a container and the volume of product contained therein.

12.     Nonfunctional slack-fill is the empty space in a package that is filled to less than its capacity for reasons which are illegitimate or unlawful.

13.     Defendant packages the Products in an opaque rectangular box. The dimensions of boxes of Junior Mints® is: 5.5 inches tall by 3.25 inches wide by .75 inches deep. The dimensions of boxes of Sugar Babies® is: 6.75 inches tall by 3.5 inches wide by .75 inches deep.

14.     The size of the box in and of itself is a representation by Defendant as to the amount of candy product contained in the box. Plaintiff and other consumers of the Products detrimentally and reasonably relied on this representation of quantity when they purchased the Products.

15.     Plaintiff and other consumers of the Products made their purchase decisions based upon a visual observation of the Products' packaging through the showcase window of a movie theater concession stand.

16.     Plaintiff and other consumers of the Products did not have a reasonable opportunity to view any other representations of quantity contained on the Products' packaging, e.g., net weight or serving disclosures.

17.     Even if Plaintiff and other consumers of the Products had a reasonable opportunity to review prior to the point of sale other representations of quantity like net weight or serving disclosures, they did not and would not have reasonably

---

[2]http://www.consumerreports.org/cro/magazinearchive/2010/january/shoppin g/productpackaging/overview/product-packaging-ov.htm (quoting Brian Wansink, professor and director of the Cornell Food and Brand Lab, who studies shopping behavior of consumers).

5

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

understood or expected it to translate to a quantity of candy product meaningfully different from their expectation of a quantity of candy product commensurate with the size of the box.

18.   Plaintiff made a one-time purchase of a 3.5 oz. box of Junior Mints® during a visit to the Pacific Theaters at the Grove in Los Angeles, California in 2016.

19.   Plaintiff paid approximately $3.75 for the Product.

20.   At the time Plaintiff purchased the Product, the Product was in a glass showcase, behind a concession counter.

21.   Glass showcases are uniformly used for the sale of the Products at all movie theater concession counters throughout California and the United States as a security measure and for customer convenience.

22.   Therefore, Plaintiff, like all purchasers of the Products from movie theater concession stands, did not have the opportunity to inspect the Product's packaging for other representations of quantity of candy product contained therein other than the size of the box itself.

23.   For example, Plaintiff did not have the opportunity to inspect any net weight or serving disclosures contained on the box. Instead, she observed the Product from a distance through the showcase window and pointed it out to the concession counter employee. Plaintiff then paid for the Product before she took physical possession of the Product.

24.   Even if Plaintiff had been given the opportunity to review all parts of the packaging and observed other representations of quantity such as net weight or serving disclosures, Plaintiff would not have reasonably understood or expected it to translate to a quantity of candy product meaningfully different from her expectation of a quantity of candy product commensurate with the size of the box.

25.   Plaintiff reasonably and detrimentally relied on the size of the box as a representation by Defendant of the amount of candy product contained in the Products' containers.

26.     Once Plaintiff took her seat in the movie theater, Plaintiff opened the top of the Product's box. Only then did she discover to her disappointment that the Product's box was only roughly half full, while the other half constituted nonfunctional slack-fill.

27.     Prior to the point of sale, the Products' packaging does not allow for a visual or audial confirmation of the contents of the Products. The Products' opaque packaging prevents a consumer from observing the contents before opening. Even if a reasonable consumer were to "shake" the Products before opening the box, the reasonable consumer would not be able to discern the presence of any nonfunctional slack-fill, let alone 45% nonfunctional slack-fill.

28.     The front label of the Products indicates a net weight of 3.5 ounces (99 grams) for Junior Mints® and 6 ounces (170 grams) for Sugar Babies®. The nutrition panel on the back of the Products report a total of 2.5 and 4.5 servings per container for Junior Mints® and Sugar Babies®, respectively. True and accurate representations of the back of the Products' packaging are shown in the images below:



///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

29.     Disclosures of net weight and serving sizes in a measurement of ounces or grams does not allow the reasonable California or American consumer to make any meaningful conclusion about the quantity of candy product contained in the Products' boxes that would be different from the reasonable consumer's expectation that the quantity of candy product is commensurate with the size of the box.

30.     The net weight and serving size disclosures did not allow Plaintiff to make—and Plaintiff therefore did not make—any meaningful conclusion about the quantity of candy product contained in the Products' boxes that was different than Plaintiff's expectation that the quantity of candy product would be commensurate with the size of the box.

31.     Moreover, the top of the Products' boxes clearly indicate that it will open outward when unsealed. This specific design leads the reasonable consumer to believe that the package does not require any empty space to account for the opening of the box, such as with a perforated tab whose intended use might be to dispense the candy product. A true and accurate representation is set forth below:



32.     Plaintiff would not have purchased the Product had she known that the Product contained slack-fill which serves no functional purpose.

33.     During Plaintiff's investigation, Plaintiff confirmed that Defendant uniformly under-fills the Products' boxes, rendering a whopping 45% of each box slack-fill, none of which serves a functional or lawful purpose. A true and accurate representation is set forth in images below: the inside of the Junior Mints® box is pictured on the top, and Sugar Babies® is pictured on the bottom.

///

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069





34.     The Products are made, formed and filled as to be misleading. The Products therefore are misbranded.

35.     The slack-fill contained in the Products does not serve a legitimate or lawful purpose.

36.     The slack-fill contained in the Products does not protect the contents of the packages.

37.     In fact, the greater the slack-fill, the more room the contents have to bounce around during shipping and handling, and the more likely the contents are to break and sustain damage.

38.     If, on the other hand, the amount of candy product contained in each box were commensurate with the size of the box as consumers expect, then the candy

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1  product would have less room to move around during shipping and handling, and

2  would be less likely to sustain damage.

3      39.    As such, the slack-fill present in the Products makes the candy product

4  more susceptible to damage, and in fact causes the candy product to often sustain

5  damage.

6      40.    The Products are packaged in a box and sealed with heated glue. A true

7  and correct representation of the heated glue is shown in the image below.



8

9

10

11

12

13

14     41.    The equipment used to seal the carton does not breach the inside of the

15  Products' containers during the packaging process. The heated glue is applied to an

16  exterior flap of the box, which is then sealed over the top by a second exterior flap.

17     42.    Neither the heated glue application nor the sealing equipment require

18  slack-fill during the manufacturing process. Even if there were no slack-fill present

19  in the Products' boxes, the machines used for enclosing the contents in the package

20  would work without disturbing the packaging process.

21     43.    The slack-fill present in the Products' container is not a result of the candy

22  product settling during shipping and handling. Given the Products' density, shape,

23  and composition, any settling occurs immediately at the point of filling the box. No

24  additional product settling occurs during subsequent shipping and handling.

25     44.    Contrary to a powder product, for example, the contents of the Products

26  are of a great enough density such that any slack-fill present at the point of sale was

27  present at the time of filling the containers and packaging the contents.

28  ///

45.     The Products do not use packaging that is part of a reusable container with any significant value to the Products independent of its function to hold the candy product.

46.     For example, the Products' containers are not commemorative items.

47.     The Products' containers are boxes intended to be discarded into the recycling bin immediately after the contents have been completely consumed. Plaintiff, in fact, discarded the Product's box after consuming the candy product contained therein.

48.     Defendant can easily increase the quantity of candy product contained in each box (or, alternatively, decrease the size of the containers) by 45% volume.

49.     The "Nutrition Facts" panel on the back of each box states "Servings Per Container about 4." By arithmetic, each serving would be equal to 100% expected total fill, divided by 4 servings, yielding a value of 25% of volume per serving. Given the Products can accommodate an additional 45% of candy product, consumers are being shortchanged roughly 1.8 servings per box.

50.     Contrast Defendant's packaging of different boxed candy products within the line of Products at issue, such as "regular" Junior Mints® (pictured in Paragraph 1 above) and "Junior Mints XL" ("XL") (pictured below), another candy product manufactured by Defendant and similarly sold at retail outlets and movie theaters throughout California and the United States. A true and correct representation of the front of XL is shown in the image below.



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

11

51.   XL is sold in identical packaging to that of the Products, i.e., opaque boxes of identical size, physical dimensions, shape. and material.

52.   XL is packaged using identical fill and heated glue enclosing machines to those of the Products.

53.   XL contains identical candy—identical size, shape. and density—as that of the Products.

54.   However, contrary to the Products, XL contains more candy product. The Products' packaging contains 40 pieces of candy, yielding 45% nonfunctional slack-fill. In contrast, XL, which has the exact same packaging, contains 47 pieces of candy, yielding 33% nonfunctional slack-fill. In other words, the two products within the line of Products at issue have the exact same packaging and candy product, and the only difference is the amount of candy product contained therein.

55.   The Products both have the serving size of 16 pieces of the same candy. Yet, XL contains a greater number of total servings. A true and correct presentation of the nutritional panel of XL, which reports its serving size and total servings per container, is set forth below with annotations.



56.   This evidences that Defendant clearly is capable of increasing the amount of candy product contained in "regular" Junior Mints®, as demonstrated by the packaging and sale of the "XL" version.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles. CA 90069

12

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

57.     XL's packaging evidences that the slack-fill present in the Products is nonfunctional.

58.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not necessary to protect and in fact does not protect the contents of the Products.

59.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not a requirement of the machines used for enclosing the contents of the Products.

60.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not a result of unavoidable product settling during shipping and handling

61.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not needed to perform a specific function.

62.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is not part of a legitimate reusable container.

63.     In short, by including more candy product in the exact same box, and then reporting a higher number of total servings, Defendant itself admits that the Products contain nonfunctional slack-fill.

64.     XL's packaging evidences that the slack-fill present in the Products, and at a minimum in the "regular" version of the Products, is able to further increase the level of fill in the Products.

65.     XL's packaging evidences that Defendant has reasonable alternative designs available to package its Products.

66.     Plaintiff did not expect that the Product would contain nonfunctional slack-fill, especially given that nonfunctional slack-fill, as opposed to functional slack-fill, is prohibited by federal law and California law.

67.     Defendant's   conduct   threatens   California   consumers   by   using intentionally deceptive and misleading slack-filled containers. Defendant's conduct also threatens other companies, large and small, who "play by the rules." Defendant's conduct stifles competition and has a negative impact on the marketplace, and reduces consumer choice.

68.     Defendant's packaging and advertising of the Products violate California law against misbranding, which contains requirements that mirror the FDCA, as described herein.

69.     There is no practical reason for the nonfunctional slack-fill present in the Products other than to mislead consumers as to the actual volume of the Products being purchased by consumers while simultaneously providing Defendant with a financial windfall as a result of money saved from lower supply costs.

70.     Plaintiff makes the allegations herein upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## CLASS ALLEGATIONS

71.     Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States for personal use and not for resale during the time period February 10, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

72.     In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the State of California for personal use and not for resale during the time period February 10, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

14

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    or endorsement of the Product."

2    73.    The Class is so numerous that their individual joinder herein is

3    impracticable. On information and belief, the Class numbers in the hundreds of

4    thousands or more throughout the United States and California. The Class is

5    sufficiently numerous because hundreds of thousands of units of the Products have

6    been sold in California during the time period February 10, 2013, through the present

7    (the "Class Period").

8    74.    There is a well-defined community of interest in the questions of law and

9    fact involved affecting the parties to be represented.  The questions of law and fact

10   common to the Class predominate over questions which may affect individual Class

11   members.  Common questions of law and fact include, but are not limited to, the

12   following:

13        a.    Whether Defendant's conduct constitutes an unfair method of

14   competition, or unfair or deceptive act or practice, in violation of Civil Code Section

15   1750, *et seq.*;

16        b.    Whether Defendant misrepresented the approval of the FDA,

17   United States Congress, and California Legislature that the Products' packaging

18   complied with federal and California slack-fill regulations and statutes in violation of

19   Civil Code Section 1750, *et seq.*;

20        c.    Whether Defendant used deceptive representations in connection

21   with the sale of the Products in violation of Civil Code Section 1750, *et seq.*;

22        d.    Whether Defendant represented the Products have characteristics

23   or quantities that they do not have in violation of Civil Code Section 1750, *et seq.*;

24        e.    Whether Defendant advertised the Products with intent not to sell

25   them as advertised in violation of Civil Code Section 1750, *et seq.*;

26        f.    Whether Defendant represented that the Products have been

27   supplied in accordance with a previous representation of quantity of candy product

28

contained therein by way of its packaging when it has not, in violation of Civil Code Section 1750, *et seq.*;

g.     Whether Defendant's packaging is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

h.     Whether Defendant knew or by the exercise of reasonable care should have known its packaging was and is untrue or misleading in violation of Business and Professions Code Section 17500, *et seq.*;

i.     Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

j.     Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

k.     Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code Section 17200, *et seq.*;

l.     Whether Defendant's packaging is false or misleading and therefore misbranded in violation of California Health and Safety Code sections 110660, 110665, or 110670;

m.     Whether the Products contain nonfunctional slack-fill in violation of 21 C.F.R. Section 100.100, *et seq.*;

n.     Whether Plaintiff and the Class paid more money for the Products than they actually received; and

o.     How much money Plaintiff and the Class paid for the Products than they actually received.

75.     Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

76.     Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product under

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

the false belief that the Product contained an amount of candy product commensurate with the size of the box. Plaintiff relied on Defendant's packaging and would not have purchased the Product if she had known that the Product contained nonfunctional slack-fill.

77. A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

78. The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

79. Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

80. Absent a class action, Defendant will likely retain the benefits of its wrongdoing. Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein. Absent a representative action, the Class will continue to suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

///

///

///

## COUNT ONE

### Violation of California Consumers Legal Remedies Act,

### California Civil Code § 1750, *et seq.*

81.     Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

82.     Plaintiff brings this cause of action pursuant to Civil Code Section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States for personal use and not for resale during the time period February 10, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

83.     In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the State of California for personal use and not for resale during the time period February 10, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

84.     The Class consists of thousands of persons, the joinder of whom is impracticable.

85.     There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, including but not limited to those questions listed hereinabove.

86.     The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

87.     The practices described herein, specifically Defendant's packaging, advertising, and sale of the Products, were intended to result in the sale of the Product

Clarkson Law Firm, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

to the consuming public and violated and continue to violate the CLRA by (1) misrepresenting the approval of the Products as compliant with 21 C.F.R Section 100.100 and the Sherman Law; (2) using deceptive representations in connection with the Products; (3) representing the Products have characteristics and quantities that they do not have; (4) advertising and packaging the Products with intent not to sell them as advertised and packaged; and (5) representing that the Products have been supplied in accordance with a previous representation as to the quantity of candy product contained within each box, when it has not.

88.     Defendant fraudulently deceived Plaintiff and the Class by representing that the Products' packaging which includes 45% nonfunctional slack-fill actually conforms with federal and California slack-fill regulations and statutes including the Sherman Law and 21 C.F.R. Section 100.100.

89.     Defendant packaged the Products in boxes which contain 45% nonfunctional slack-fill by making material misrepresentations to fraudulently deceive Plaintiff and the Class.

90.     Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Products as having characteristics and quantities which they do not have, e.g., that the Products are free of nonfunctional slack-fill when they are not. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class.  Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

91.     Defendant fraudulently deceived Plaintiff and the Class by packaging and advertising the Products with intent not to sell them as advertised, by intentionally under-filling the Products' containers and instead replacing candy product with nonfunctional slack-fill. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    depriving them of their legal rights and money.

2         92.    Defendant fraudulently deceived Plaintiff and the Class by representing

3    that the Products were supplied in accordance with an accurate representation as to

4    the quantity of candy product contained therein when they were not. Defendant

5    presented the physical dimensions of the Products' packaging to Plaintiff and the

6    Class before the point of purchase and gave Plaintiff and the Class a reasonable

7    expectation that the quantity of candy product contained therein was commensurate

8    with the size of packaging. In doing so, Defendant intentionally misrepresented and

9    concealed material facts from Plaintiff and the Class.  Said misrepresentations and

10   concealment were done with the intention of deceiving Plaintiff and the Class and

11   depriving them of their legal rights and money.

12        93.    Defendant knew or should have known, through the exercise of

13   reasonable care, that the Products' packaging was misleading.

14        94.    Defendant's actions as described herein were done with conscious

15   disregard of Plaintiff's rights, and Defendant was wanton and malicious in its

16   concealment of the same.

17        95.    Defendant's Product packaging was a material factor in Plaintiff's and the

18   Class's decision to purchase the Products. Based on Defendant's Product packaging,

19   Plaintiff and the Class reasonably believed that they were getting more candy product

20   than they actually received. Had they known the truth of the matter, Plaintiff and the

21   Class would not have purchased the Products.

22        96.    Plaintiff and the Class have suffered injury in fact and have lost money as

23   a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically,

24   Plaintiff paid for candy product she never received. Plaintiff would not have

25   purchased the Product had she known the boxes contained nonfunctional slack-fill.

26        97.    Defendant's false and misleading packaging should be enjoined due to

27   the false, misleading, and/or deceptive nature of Defendant's packaging. In addition,

28   Defendant should be compelled to provide restitution and damages to consumers who

1  paid for candy products they never received due to Defendant's representation that it

2  contained a commensurate amount of candy product for a box of its size.

3     98.    By letter dated September 15, 2016, Plaintiff advised Defendant of its

4  false and misleading claims pursuant to California Civil Code Section 1782(a).

**COUNT TWO**

**Violation of California False Advertising Law,**

**Business and Professions Code §17500,** *et. seq.*

8     99.    Plaintiff repeats and realleges all allegations of the previous paragraphs,

9  and incorporates the same as if set forth herein at length.

10    100.   Plaintiff brings this cause of action pursuant to Business and Professions

11  Code Section 17500, *et seq.*, on her own behalf and on behalf of all other persons

12  similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who

13  purchased the Products in the United States for personal use and not for resale during

14  the time period February 10, 2013, through the present. Excluded from the Class are

15  Defendants' officers, directors, and employees, and any individual who received

16  remuneration from Defendants in connection with that individual's use or

17  endorsement of the Product."

18    101.   In the alternative, Plaintiff seeks to represent a Class consisting of "All

19  persons who purchased the Products in the State of California for personal use and

20  not for resale during the time period February 10, 2013, through the present. Excluded

21  from the Class are Defendants' officers, directors, and employees, and any individual

22  who received remuneration from Defendants in connection with that individual's use

23  or endorsement of the Product."

24    102.   California's False Advertising Law, California Business and Professions

25  Code Section 17500, *et seq.*, makes it "unlawful for any person to make or

26  disseminate or cause to be made or disseminated before the public in this state, in any

27  advertising device or in any other manner or means whatever, including over the

28  internet, any statement, concerning personal property or services, professional or

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

21

**CLASS ACTION COMPLAINT**

otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

103.    Defendant knowingly manipulated the physical dimensions of the Products' boxes, or stated another way, under-filled the amount of candy product in each of the Products, by including 45% nonfunctional slack-fill as a means to mislead the public about the amount of candy product contained in each package.

104.    Defendant controlled the packaging of the Products. It knew or should have known, through the exercise of reasonable care that its representations about the quantity of candy product contained in the Products were untrue and misleading.

105.    The general public bases its purchasing decisions on the dimensions of a product's packaging. Consumers generally do not look at any label information, such as net weight or serving disclosures. Instead, the general public chooses a larger box because it leads them to believe they are receiving a better value.

106.    Defendant's conduct of packaging the Products with 45% nonfunctional slack-fill instead of including more candy product or smaller boxes is likely deceive the general public.

107.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

108.    Pursuant to Business and Professions Code Sections 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of under-filling the Products' containers. Likewise, Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff and the Class restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

109.    Plaintiff and the Class have suffered injury in fact and have lost money as

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims by Defendant that the Product was of the quantity represented by Defendant's packaging and advertising. Plaintiff would not have purchased the Product if she had known that the claims and advertising as described herein were false.

## COUNT THREE

### Violations of California Unfair Competition Law,

### Business and Professions Code § 17200, *et seq.*

110.    Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

111.    Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, *et seq.*, on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the United States for personal use and not for resale during the time period February 10, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

112.    In the alternative, Plaintiff seeks to represent a Class consisting of "All persons who purchased the Products in the State of California for personal use and not for resale during the time period February 10, 2013, through the present. Excluded from the Class are Defendants' officers, directors, and employees, and any individual who received remuneration from Defendants in connection with that individual's use or endorsement of the Product."

113.    Congress passed the Federal Food, Drug, and Cosmetic Act ("FDCA"), and in so doing established the Federal Food and Drug Administration ("FDA") to "promote the public health" by ensuring that "foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

114.   The FDA has implemented regulations to achieve this objective. *See, e.g.*, 21 C.F.R. § 101.1 *et seq.*

115.   The FDA enforces the FDCA and accompanying regulations; "[t]here is no private right of action under the FDCA." *Ivie v. Kraft Foods Global, Inc.*, 2013 U.S. Dist. LEXIS 25615, 2013 WL 685372, at *1 (internal citations omitted).

116.   In 1990, Congress passed an amendment to the FDCA, the Nutrition Labeling and Education Act ("NLEA"), which imposed a number of requirements specifically governing food nutritional content labeling. *See, e.g., 21 U.S.C. § 343 et. seq.*

117.   Plaintiff is not suing under the FDCA, but under California state law.

118.   The California Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), Cal. Health & Safety Code § 109875 *et seq.*, has adopted wholesale the food labeling requirements of the FDCA and NLEA as the food regulations of California. Cal. Health & Safety Code § 110100.

119.   The Sherman Law declares any food to be misbranded if it is false or misleading in any particular, if the labeling does not conform to the requirements for nutrition labeling set forth in certain provisions of the NLEA. Cal. Health & Safety Code §§ 110660, 110665, 110670.

120.   The UCL prohibits "any unlawful, unfair... or fraudulent business act or practice." Cal. Bus & Prof. Code § 17200.

## A.   "Unfair" Prong

121.   Under California's False Advertising Law, Cal. Bus. & Prof. Code Section 17200, *et seq.*, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

122.   Defendant's action of leaving 45% nonfunctional slack-fill in its Products does not confer any benefit to consumers.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

24

CLASS ACTION COMPLAINT

123.    Defendant's action of leaving 45% nonfunctional slack-fill in its Products causes injuries to consumers because they do not receive a quantity of candy commensurate with their reasonable expectation.

124.    Defendant's action of leaving 45% nonfunctional slack-fill in its Products causes injuries to consumers because they do not receive a level of hunger satiety commensurate with their reasonable expectation.

125.    Defendant's action of leaving 45% nonfunctional slack-fill in its Products causes injuries to consumers because they end up overpaying for the Products and receiving a quantity of candy less than what they expected to receive.

126.    Consumers cannot avoid any of the injuries caused by the 45% nonfunctional slack-fill in Defendant's Products.

127.    Accordingly, the injuries caused by Defendant's activity of including 45% nonfunctional slack-fill in the Products outweighs any benefits.

128.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

129.    Here, Defendant's conduct of including 45% nonfunctional slack-fill in the Products' packaging has no utility and financially harms purchasers.  Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

130.    Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

131.    The California legislature maintains a declared policy of prohibiting nonfunctional slack-fill in consumer goods, as reflected in California Health and Safety Code Section 110100.

132.    The 45% of nonfunctional slack-fill contained in the Products is tethered

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1    to a legislative policy declared in California according to Cal. Health & Safety Code

2    Section 110100.

3        133.    Defendant's packaging of the Products, as alleged in the preceding

4    paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unfair

5    conduct.

6        134.    Defendants knew or should have known of its unfair conduct.

7        135.    As alleged in the preceding paragraphs, the misrepresentations by

8    Defendant detailed above constitute an unfair business practice within the meaning

9    of California Business and Professions Code Section 17200.

10        136.    There were reasonably available alternatives to further Defendant's

11    legitimate business interests, other than the conduct described herein. Defendant

12    could have used packaging appropriate for the amount of candy product contained

13    within the Products.

14        137.    All of the conduct alleged herein occurs and continues to occur in

15    Defendant's business. Defendant's wrongful conduct is part of a pattern or

16    generalized course of conduct repeated on thousands of occasions daily.

17        138.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and

18    the Class seek an order of this Court enjoining Defendant from continuing to engage,

19    use, or employ its practice of under-filling the Products' boxes.  Likewise, Plaintiff

20    and the Class seek an order requiring Defendant to disclose such misrepresentations,

21    and additionally request an order awarding Plaintiff restitution of the money

22    wrongfully acquired by Defendant by means of responsibility attached to Defendant's

23    failure to disclose the existence and significance of said misrepresentations in an

24    amount to be determined at trial.

25        139.    Plaintiff and the Class have suffered injury in fact and have lost money as

26    a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for

27    these products. Specifically, Plaintiff paid for 45% of candy product she never

28    received.  Plaintiff would not have purchased the Product if she had known that the

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1   Product's packaging contained nonfunctional slack-fill.

2                    **B.**   **"Fraudulent" Prong**

3        140.     California Business and Professions Code Section 17200, *et seq.*,

4   considers conduct fraudulent and therefore prohibits said conduct if it is likely to

5   deceive members of the public. *Bank of W v. Superior Court*, 2 Cal. 4th 1254, 553

6   (1992).

7        141.     Members of the public base their purchasing decisions on the dimensions

8   of a product's packaging. They generally do not view label information or net weight

9   and serving disclosures. Members of the public choose a larger box because they

10   automatically assume it has better value.

11        142.     Defendant's conduct of packaging the Products with 45% nonfunctional

12   slack-fill is likely to deceive members of the public.

13        143.     Defendant's packaging of the Product, as alleged in the preceding

14   paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes

15   fraudulent conduct.

16        144.     Defendant knew or should have known of its fraudulent conduct.

17        145.     As alleged in the preceding paragraphs, the misrepresentations by

18   Defendant detailed above constitute a fraudulent business practice in violation of

19   California Business & Professions Code Section 17200.

20        146.     There were reasonably available alternatives to further Defendant's

21   legitimate business interests other than the conduct described herein. Defendant could

22   have used packaging appropriate for the amount of Product contained therein.

23        147.     All of the conduct alleged herein occurs and continues to occur in

24   Defendant's business. Defendant's wrongful conduct is part of a pattern or

25   generalized course of conduct repeated on thousands of occasions daily.

26        148.     Pursuant to Business and Professions Code Sections 17203, Plaintiff and

27   the Class seek an order of this Court enjoining Defendant from continuing to engage,

28   use, or employ its practice of under-filling the Products' containers.   Likewise,

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

Plaintiff and the Class seek an order requiring Defendant to disclose such misrepresentations, and additionally request an order awarding Plaintiff restitution of the money wrongfully acquired by Defendant by means of responsibility attached to Defendant's failure to disclose the existence and significance of said misrepresentations in an amount to be determined at trial.

149.   Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for these products.  Specifically, Plaintiff paid for 45% of candy product she never received.  Plaintiff would not have purchased the Product if she had known that the boxes contained nonfunctional slack-fill.

### C.   "Unlawful" Prong

150.   California Business and Professions Code Section 17200, *et seq.*, identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

151.   Defendant's packaging of the Products, as alleged in the preceding paragraphs, violates California Civil Code Section 1750, *et. seq.*, California Business and Professions Code Section 17500, *et. seq.*, California's Sherman Law, the FDCA, and 21 C.F.R §100.100.

152.   Defendant's packaging of the Products, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable, and constitutes unlawful conduct.

153.   Defendant knew or should have known of its unlawful conduct.

154.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code Section 17200.

155.   There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

1   could have used packaging appropriate for the amount of candy product contained
2   therein.

3       156.    All of the conduct alleged herein occurred and continues to occur in
4   Defendant's business. Defendant's wrongful conduct is part of a pattern or
5   generalized course of conduct repeated on thousands of occasions daily.

6       157.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and
7   the Class seek an order of this Court enjoining Defendant from continuing to engage,
8   use, or employ its practice of under-filling the Products' boxes. Likewise, Plaintiff
9   and the Class seek an order requiring Defendant to disclose such misrepresentations,
10  and additionally request an order awarding Plaintiff restitution of the money
11  wrongfully acquired by Defendant by means of responsibility attached to Defendant's
12  failure to disclose the existence and significance of said misrepresentations in an
13  amount to be determined at trial.

14      158.    Plaintiff and the Class have suffered injury in fact and have lost money as
15  a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for
16  these products. Specifically, Plaintiff paid for 45% candy product she never received.
17  Plaintiff would not have purchased the Product if she had known that the Products
18  contained nonfunctional slack-fill.

19  ///
20  ///
21  ///
22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28  ///

CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and on behalf of the Class defined herein, pray for judgment and relief on all Causes of Action as follows:

A.  For an order certifying the Class, appointing Plaintiff as class representative, and designating Plaintiff's counsel as counsel for the Class;

B.  For all forms of relief set forth above;

C.  Damages against Defendant in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum rate allowable by law on any amounts awarded;

D.  Restitution and/or disgorgement in an amount to be determined at trial;

E.  Punitive damages;

F.  An order enjoining Defendant from continuing to engage in the unlawful conduct and practices described herein;

G.  Reasonable attorney fees and costs;

H.  For reasonable attorney fees; and

I.  Granting such other and further as may be just and proper.

## JURY TRIAL DEMANDED

Plaintiff demand a jury trial on all triable issues.

DATED: February 10, 2017               **CLARKSON LAW FIRM, P.C.**

                                        /s/ Ryan J. Clarkson
                                        _____
                                        Ryan J. Clarkson, Esq.
                                        Shireen M. Clarkson, Esq.
                                        Shalini M. Dogra
                                        Attorneys for Plaintiff

30

CLASS ACTION COMPLAINT